UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

ANCHOR GLASS CONTAINER
CORPORATION,

     Debtor(s).

_____/

Chapter 11
Case No. 8:05-bk-15606-ALP

MEMORANDUM DECISION AND ORDER SUSTAINING OBJECTION TO CLAIM NO.
1586.0 AS UNSECURED CLAIM AND DENYING REQUEST FOR ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIM OF THE CITY OF WARNER ROBINS, GEORGIA

*Factual and Procedural Background*

     The City of Warner Robins, Georgia ("Warner Robins"), filed a timely request for

allowance of an administrative claim (Doc. No. 1153) in the amount of $351,422.61 for real and

personal property taxes for the year 2005 ("Tax Claim").[1] The Debtor's chapter 11 case was filed

during the 2005 calendar year – on August 8, 2005. Based on the date of the filing of its chapter

11 case, the Debtor has objected to the Tax Claim on the basis that it is a pre-petition claim not

entitled to administrative claim status under section[2] 503(b)(1)(B). Under section 503(b)(1)(B),

administrative expense status is provided to "any tax . . . incurred by the estate . . . ."[3] Under

Georgia law, the owner of real and personal property as of January 1st is the person that incurs

liability for the ad valorem taxes associated with that property. Therefore, because the Tax Claim

---

[1] In addition to filing the Tax Claim that was docketed in the main case as a request for allowance and payment of administrative expense (Doc. No. 1153), Warner Robins filed an identical request for administrative claim as a proof of claim (Claim No. 1586.0). Objections to this claim have been filed by the Debtor (Doc. No. 1687) and Samuel M. Sticklin, as the Alpha Resolution Trustee (Doc. No. 2112) (collectively, the "Objections"). This memorandum and order will address both the request for an administrative expense (Doc. No. 1153) and the Objections as they are based on the identical filings. (N.B.: Warner Robins did not file an alternative separate claim for treatment of the Tax Claim as an unsecured priority claim under section 507(a)(8), and the deadline for filing such a claim has long expired.)

[2] References to "section" shall be to the Bankruptcy Code, Title 11, United States Code.

[3] Both sections 503(b)(1)(B) and 507(a)(8) were amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). However, the amendments are effective as to cases filed on or after October 17, 2005. As noted, the Debtor's chapter 11 case was filed on August 8, 2005. Thus, the amendments do not apply to the

was incurred prior to the filing of the chapter 11 case, it was not incurred by the estate. Accordingly, for the reasons set forth below, the Court will deny Warner Robins' request that the Tax Claim be allowed as an administrative expense.

### *Conclusions of Law*

1. Debtor's Liability for Ad Valorem Taxes under Georgia Law

A determination of the issue of whether the Tax Claim was incurred by the estate and is therefore an administrative expense under section 503(b)(1)(B) must initially be considered in light of the applicable state law under which the tax claim arose. *Butner v. United States,* 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Because the Tax Claim arose under Georgia law, the Court reviews the pertinent provisions of Georgia statutory and case law dealing with an owner's liability for ad valorem property taxes.

Under Georgia law, the owner as of January 1st is the person responsible for filing the return with respect the property, 3 Ga. Jur. Property § 35:49 (2007) (citing Ga. Code Ann. § 48-5-10), and is liable for the ad valorem taxes associated with that property. Ga. Real Estate Finance & Foreclosure Law § 11-2 (4th ed.) (citing Ga. Code Ann. § 48-5-9; *Suttles v. B-X Corp.* 91 S.E.2d 334 (Ga. 1956)); 3 Ga. Jur. Property § 35:5 (2007) (citing Ga. Code Ann. § 48-5-9). While the owner has primary liability for ad valorem taxes, ad valorem tax liens constitute a first-priority lien on the subject property, which also vests as of January 1st. *Suttles*, 91 S.E.2d at 335; Ga. Real Estate Finance & Foreclosure Law § 11-2 (citing Ga. Code Ann. §§ 45-5-28, 48-2-56, 48-5-10; *Jamestown Assoc. v. Fulton County Bd. of Tax Assessors*, 492 S.E.2d 1 (1997)); 3 Ga. Jur. Property § 35:55 (2007).

---

Debtor's case. In any event, the amendments to these sections would not have an effect on the outcome of this contested matter.

If the Board of Tax Assessors disagrees with the return filed by the property owner, the Board is authorized to issue a notice of assessment reflecting any change in the value of the taxpayer's property. 3 Ga. Jur. Property § 35:47 (2007) (citing Ga. Code Ann. § 48-5-306(a)). The due dates for the returns range from March 1st to April 1st, depending on the county. 3 Ga. Jur. Property § 35:50 (2007) (citing Ga. Code Ann. § 48-5-18). The ad valorem taxes are due and payable as of a date determined by the population size of the jurisdiction, with the latest possible date being December 20th of each year. Ga. Real Estate Finance & Foreclosure Law § 11-2 (citing Ga. Code Ann. §§ 48-5-24, 48-5-150, 48-5-148).

Thus, in *Jamestown Associates. v. Fulton County Board of Tax Assessors*, during pendency of an inverse condemnation suit, the legal title holder as of January 1st of each year of ownership remained liable for taxes incurred until actual title passed to the city under a settlement. 492 S.E.2d at 2. Likewise, in *Teachers Retirement System of Georgia v. City of Atlanta*, the unpaid ad valorem taxes were both a lien on property being foreclosed as well as a personal liability of the prior owners. 288 S.E.2d 200, 204 n. 6 (Ga. 1982) ("Of course, the prior owners remain liable for the taxes") (citing *Jones v. Morse Brothers Lumber Co.,* 156 S.E. 587 (1930))).

2. Administrative Tax Claims under Section 503(b)(1)(B)(i)

A bankruptcy estate is created upon the filing of the petition. 11 U.S.C. § 541. Administrative expenses are expenses incurred by the trustee or debtor-in-possession in administering the estate. *In re Columbia Gas System, Inc.,* 146 B.R. 114, 116 (Bankr. D. Del. 1992) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 66 (1978)). Accordingly, only liabilities incurred by the estate post-petition, as distinguished from taxes for which the debtor already had a pre-petition liability, may be allowed as administrative expenses. *In re The Pasta Café Corp.*, 284 B.R. 564, 566 (Bankr. D. Md. 2002) (citing *In re Wang Zi Cashmere Products, Inc.,* 202 B.R. 228,

230 (Bankr. D. Md. 1996)).  Put another way, a claim cannot be both a pre-petition claim against the debtor and a post-petition administrative claim against the bankruptcy estate. *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp. (In re Midland Indus. Serv. Corp.)*, 35 F.3d 164, 166-67 (5th Cir. 1994); *Marion County Treasurer v. Blue Lustre Prod., Inc. (In re Blue Lustre Prod., Inc.)*, 214 B.R. 188, 190 (S.D. Ind. 1997).

A tax "claim" for bankruptcy purposes includes any right to payment of a tax obligation whether fixed, contingent, or unliquidated.  11 U.S.C. §101(5).[4]  It may be contingent, for example, because the due date for the tax payment had not passed as of the petition date. *In re Wang Zi Cashmere Products, Inc.*, 202 B.R. 228, 230 (Bankr. D. Md. 1996).  It may be unliquidated because the taxing authority has not yet set tax rates or because the value of the property had not been finally determined. *Id.*  Thus, while a taxing authority holds a liquidated claim on the due date for the taxes that might be payable post-petition, an unliquidated contingent claim may nevertheless have arisen at a pre-petition point in time substantially earlier than the date on which the tax liability finally becomes liquidated and noncontingent. *The Pasta Café Corp.*, 284 B.R. at 567; *see also Columbia Gas System,* 146 B.R. at 118 (fixing of the amount finally due "is not required for an unmatured, contingent claim for taxes to exist").

Section 503(b)(1)(B)(i) requires a two-part analysis.  First, it must be determined whether the property taxes were "incurred" by the estate within the meaning of that section.  Second, even if the taxes were incurred by the estate, they still are not an administrative claim if they are entitled to priority under section 507(a)(8)(B) based on their being "assessed" against the debtor before the commencement of the case.  With respect to section 503(b)(1)(B)(i)'s reference to "incurred by

---

[4] The legislative history of the Code suggests that Congress intended to define the term claim very broadly under § 101(5), so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Piper*, 58 F.3d 1573, 1576 (11th Cir. 1995); H.R.Rep. No. 595, 95th Cong., 2d Sess. 309

the estate," the Bankruptcy Code does not define when property taxes are "incurred" by a debtor's estate. *Columbia Gas System,* 146 B.R. at 116. However, most courts considering the issue have found that a tax is incurred when it accrues and becomes a fixed liability. *Columbia Gas Transmission Corp.,* 37 F.3d 982, 985-86 (3d Cir. 1994); *Federated Department Stores, Inc.,* 270 F.3d 994, 1000-1001 (6th Cir. 2001); *Midland Indus. Serv. Corp.,* 35 F.3d at 166-67; *see also Blue Lustre Prod.,* 214 B.R. at 190 (stating "for purposes of section 503(b)(1)(B)(i), a property tax is incurred as soon as the tax accrues and the debtor is liable for the tax"); *In re Soltan,* 234 B.R. 260, 271 (Bankr. E.D.N.Y. 1999) ("The significant event is the date the tax accrues and becomes a fixed obligation."); *In re Northeastern Ohio Gen. Hosp. Assn.,* 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991) ("For purposes of administrative expense allowance, a tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable."). A tax obligation accrues when the event triggering liability occurs. *Midland Indus. Serv.,* 35 F.3d at 167. Thus, in *Midland Industrial Services,* the taxes were held not to be an administrative expense of the estate because the events that triggered the tax liability – ownership of the property and the attachment of the tax lien -- occurred pre-petition. *Id.*

If a court concludes that a tax was incurred by the estate for purposes of section 503(b)(1)(B)(i), the tax obligation will still not qualify for administrative expense treatment if it falls within the definition of a pre-petition priority tax claim under section 507(a)(8)(B). That section provides an eighth priority (as opposed to first priority for administrative claims under section 503) for a property tax "assessed before the commencement of the case . . . ." There has been a great deal of confusion in determining Congress's meaning of "assessed" under section 507(a)(8)(B). *Federated Department Stores,* 270 F.3d at 1004. As discussed in *Federated,*

(1978). *See In re St. Laurent II,* 991 F.2d 672, 678 (11th Cir.1993) (stating that "[t]he legislative history of the Bankruptcy Code indicates that 'claim' was to be given the 'broadest possible definition'").

"assessed" has many different meanings and can refer to nearly every step in the process of imposing a property tax. *Id.* Generally, the cases diverge with one school of thought being that a tax is not "assessed" within the meaning of section 508(a)(8) until all things necessary to create the tax liability have occurred -- determination of the property's value, determination of applicable tax rate, and attachment of a lien on the property. *Id.* The other school of thought, and the one adopted by the Court in *Federated*, is that a tax is "assessed" on the date the entity is made liable for it, regardless of when the tax is calculated and due. *Id. at* 1005; *see also In re Point Restaurant and Oyster Bar,* 86 B.R. 252, 253-254 (Bankr. N.D. Fla. 1988) (court rejects tax assessor's position that ad valorem taxes incurred when bills are sent rather than as of January 1st).

This interpretation has the effect of giving the term "assessed" under section 507(a)(8) the same meaning as "incurred" under § 503(b)(1)(B)(i). *Id.; see also In re Prairie Mining, Inc.,* 194 B.R. 248, 257 (Bankr. D. Kan. 1995) ("[T]he Court is convinced that Congress intended for all property taxes coming due post-petition to qualify for either the first or eighth priority. This purpose is best served by construing 'incurred' in § 503 to mean the same thing as 'assessed' in § 507(a)(8)(B)."); *In re Garfinckels,* 203 B.R. 814, 818-819 (Bankr. D.D.C. 1996) (noting that the critical focus under § 507(a)(8)(B) is when the property inescapably becomes subject to the tax as this interpretation preserves Congress's intent that the debtor's estate be liable only for those taxes the estate incurred). This Court also concludes that this interpretation of "assessed" is the appropriate one. That is, "a claim for a property tax must be considered to be 'incurred' under section 503 or 'assessed' under section 507(a)(8)(B) as soon as the debtor (or the debtor's property, if the tax is collectible only from the property) is necessarily liable to pay it." *Prairie Mining*, 194 B.R. at 258.

This position is consistent with the wording change to section 507(a)(8) under BAPCPA, which replaced the word "assessed" with "incurred," thus making the wording of section 507(a)(8) harmonious with the corresponding and mutually exclusive treatment of tax claims contained in section 503(b)(1)(B)(i).   It appears that Congress recognized that the use of the term "assessed," "created some confusion" as discussed above, and sought to clarify this confusion in the BAPCPA amendment to section 507(a)(8)(B).  H.R. Rep. No. 109-31, at 101 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 165.  The amendment substituted the word "incurred" for "assessed" as that term is used in section 507(a)(8)(B).  This clarification is in line with the above-cited cases that hold that the priority provided by section 507(a)(8)(B) should be based on the date that the debtor became obligated with respect to the tax, rather than other state law definitions of assessed that may not bear any relation to the date on which the debtor becomes liable for payment.  Collier on Bankruptcy (15th ed. 2002), ¶ 507.10[3][c] at 507-72.5; *but see In re Proxim Corp.,* 369 B.R. 812, 816-817 (Bankr. D. Del. 2007) (concluding that "assessed" does not mean "incurred" with the result in the case that the taxing authority had neither a pre-petition priority claim nor a post-petition administrative claim).

3.  Application of section 503(b)(1)(B)(i) under Georgia Law

As discussed above, under Georgia law, the owner of property as of January 1st is the person liable for the ad valorem taxes associated with that property.  Therefore, even though the due date for payment of the taxes does not occur until months later, a "right to payment," that is, a claim under section 105(5) against the Debtor, accrued on January 1st.  In addition, the ad valorem tax liens associated with the tax claim constituted a first-priority lien on the subject property that vested as of January 1st.  Therefore, the Debtor's liability for the Tax Claim was "incurred" on

January 1, 2005.  Thus, it is not a post-petition administrative claim against the bankruptcy estate under section 503(b)(1)(B)(i).[5]

Accordingly, it is

ORDERED:

1.     The Objections of the Debtor (Doc. No. 1687) and Samuel M. Sticklin, as the Alpha Resolution Trustee (Doc. No. 2112), to the claim of the City of Warner Robins, Georgia (Claim No. 1586) are sustained.

2.     The request for allowance of administrative expense claim filed by Warner Robins (Doc. No. 1153) is denied.

DONE AND ORDERED at Tampa, Florida, on _____**SEP 1 0 2007**_____.

_____
Michael G. Williamson
United States Bankruptcy Judge

---

[5] Moreover, a second reason that the Tax Claim does not qualify as an administrative claim under section 503(b)(1)(B)(i) is that, having been incurred on January 1st, it would qualify as an unsecured priority claim under section 507(a)(8) had it been timely filed as such.